THE STATE OF KANSAS *ex rel.* v. WILLIAM ADDIS, *Mayor, et al.*

No. 11247.

SCHOOL BOARD TAX LEVY—*in city of second class, subject to intelligent, not merely formal, approval of council.* Before a levy of taxes for the support of schools by a board of education in a city of the second class becomes effective it must have the approval of the city council—not a mere perfunctory approval, but the intelligent assent and concurrence of that body.

Original proceedings in mandamus. Opinion filed November 5, 1898. *Writ denied.*

*L. B. & J. M. Kellogg*, for plaintiff.

*Buck & Spencer*, for defendants.

JOHNSTON, J. On August 15, 1898, the Board of Education of Emporia, a city of the second class, proposed a tax levy of fifteen mills for the support of public schools for the ensuing year, and at once transmitted the same to the City Council of Emporia and requested its approval of the levy. At a meeting of the City Council, duly held on August 24, 1898, the proposed levy was considered, and a resolution was passed containing a statement of the revenues and expenses of the city, but which declined to approve the levy as made by the Board of Education. The City Council did offer to approve the levy to the extent of thirteen mills, but expressly disapproved of the additional two mills of the levy as made by the Board. The Board of Education, contending that the City Council had no discretion in the matter, but that it was compelled to accept the levy as made and reported to it, caused this proceeding to be brought to compel the City Council to approve the school levy of fifteen mills as made by the Board. We are required to determine whether it is the mandatory duty of the City Council to accept the levy proposed by the Board of Education, without exercising any judgment or discretion as to the propriety of the same ; or, rather, whether the approval of the levy does not involve the intelligent assent and concurrence of the City Council. The statute prescribing how the levy shall be made, is as follows :

" The board of education shall on or before the fifteenth day of August of each year levy a tax for the support of the schools of the city for the fiscal year next ensuing, not exceeding in any one year fifteen mills on the dollar, on all personal, mixed and real

property within the district which is taxable according to the laws of this State, which levy shall be approved by the city council; and when so approved, the clerk of the board shall certify to the county clerk, who is hereby authorized and required to place the same on the tax roll of said county,'' etc. (Gen. Stat. 1897, ch. 63, § 178.

What kind of approval is required of the City Council by the foregoing provision? That the approval of that body is essential to a valid levy is conceded, but in behalf of the Board it is contended that the act required of the Council is merely formal and compulsory. It is argued that this must have been the legislative view because the board and council are distinct corporate bodies, and that in all respects each acts independently of the advice, assistance or control of the other. To the Board is confided the control and management of the schools. It determines the number of school buildings necessary, the number of teachers to be employed, and has full control of the entire expenditures to be made for school purposes. No provision is made that the Board shall report to the Council the number of children of school age within the district, the number of teachers employed, the financial status of the district, nor any other facts necessary to the ascertainment of the amount necessary for the current school expenses for the ensuing year or necessary to a determination of the rate which should be levied. In the same connection it is argued that no provision is made for the determination of a dispute between the Board and the Council as to the rate of taxation, should one arise, and that if the actual approval of the council is required it would result in some instances in giving the entire control of the levy to the Council instead of to the members of the Board who have been chosen because of their peculiar fitness to

manage and control the educational interests of the city.

It will be observed that these are mainly arguments *ab inconvenienti*, and can have little effect in interpreting a statutory requirement so plain as the one in question. We think the terms employed when given their natural and ordinary signification involve an exercise of judgment and discretion, and that the approval referred to implies the official assent and sanction of the city council. Nothing in the consequences of the act or in the difficulties attending its operation warrants the court in eliminating one of the checks plainly placed by the Legislature upon the power of imposing a tax. Within constitutional restrictions the Legislature has full power to regulate the manner in which taxes shall be levied and collected, and the methods prescribed must be strictly pursued. It may delegate the power of determining the amount to be raised by tax and the rate of the levy upon one or more of the legislative tribunals or officers as it may deem best. It might have lodged the power of making this levy in either of these bodies, as well as in both of them, and might have required that there should be a joint concurrence of the board of education, the city council and the board of county commissioners.

It will be noticed that there is no uniformity in the methods of imposing taxes in the State and its various subdivisions. The state tax is provided for by an act passed at each regular session of the Legislature; taxes for county purposes are levied by the board of county commissioners; township taxes are imposed by the concurrent action of the township trustee and the board of county commissioners; while taxes for city purposes are levied by city councils. The Legislature in its wisdom has provided a variety of methods

for levying taxes to maintain schools. In cities of the first class taxes for that purpose are levied by the board of education; in cities of the second class by the concurrent action of the board of education and the city council; while in school districts, which include cities of the third class, the tax is voted at the annual meeting by the qualified electors.

The legislative history of school levies in cities is worthy of consideration. In 1862, the Legislature placed the government and control of city schools in a board of trustees, two to be chosen by the electors from each ward, substantially as they are elected at this time; but the power to provide for the support of the schools by the levy of taxes was confided to the city council. (Comp. Laws, 1862, ch. 46, art. 4.) In 1868, boards of education were created in cities of the first class by the election of three members from each ward, who had full control of the schools, and were required annually to prepare an estimate of the funds required for the support of the schools for the ensuing year, and the city council was authorized and required to levy the same as a tax provided it did not exceed a specified limit.

In cities of the second class boards of education were invested with like authority, and the duty of making a levy for school purposes was imposed upon city councils, substantially in the same manner as in cities of the first class. Gen. Stat. 1868, ch. 18, § 85; ch. 19, § 67. In 1872, it was provided that boards of education in cities of the second class should levy the tax for the support of common schools, not exceeding six mills on the dollar, and the city council had no part or lot in the matter. Laws of 1872, ch. 100, § 114. In the following year, the Legislature changed the law in this respect by requiring that the levy made by the board should have the approval of

the city council, and that it should not be certified to the county clerk to be placed on the tax roll until the approval of the city council was obtained. (Laws 1873, ch. 65, § 7.) The approval of the city council has ever since been required, and no material change has been made in this provision of the law except as to the rate of the levy.

It thus appears that part of the time in such cities, levies for school purposes have been made by city councils alone, part of the time by boards of education alone, and part of the time by the concurrent action of the boards of education and the city councils. In view of this history it is not easy to say that the approval referred to is a purely perfunctory act of the city council. If the approval had been required of an officer vested with authority to certify papers or authenticate proceedings, there would have been more room for the contention that is made by the board. No such duty is imposed on the city council, and a function of the kind suggested is not consistent with its character and organization. It is a deliberative body to which matters are submitted for consideration and decision, and in this case we think the approval required involves consideration and assent. Nothing in the language employed indicates that the approval required is merely formal and mandatory, and it occurs to us that no good purpose could be subserved by a perfunctory approval. Treated as a limitation on the power to levy, a reason for the law exists, but unless the assent and agreement of the council was intended it is difficult to imagine a sensible purpose in the provision.

In the earlier history of schools, the council was invested with the entire power to make the levy, and no good reason is seen why it may not share that power with the board of education, in the same way that the

township officers share the power of levying taxes for township purposes with the board of county commissioners. We cannot escape the conviction that this provision was intended as an additional limitation on the power to levy a tax. While the board employs all the teachers, makes all the contracts, furnishes all the supplies, and has exclusive control in distributing the funds derived from the tax, for some reason the Legislature deemed it wise to place another limitation on its power to impose a tax. The board it is true has better opportunities for ascertaining the needs of the schools and some very forcible objections are made against the policy of a divided authority in the making of levies, but these are matters for the Legislature to settle, and the objections are not insuperable. Although officers of distinct corporations, the territory and people represented by each body are substantially identical, and it was competent for the Legislature to confer the power of levy on one or both of them.

The council is necessarily acquainted with the amount of taxable property, the general condition of the people and their ability to provide funds for public purposes. The books and records of the board are public and open to the council and all others interested for information as to what is required for the maintenance of the public schools, and the board if called upon can furnish such detailed information as may be necessary. While the limitation gives great power to the city council in the matter we cannot assume that the council will abuse this power or refuse concurrence when a fair and reasonable levy is proposed.

In every case where official approval is required to which our attention has been called it involves the exercise of discretion and judgment. The following may be mentioned as examples of what is meant by

an official approval. When bills or joint resolutions are passed by the House of Representatives and the Senate, they are sent to the Governor for his approval. When certain appointments to public offices are made by the Governor, they are transmitted to the Senate for its approval. Official bonds of state officers are to be submitted to the executive council for approval; and the bonds of district and county officers are to be submitted to other boards and officers for approval. Appeal bonds and undertakings in judicial proceedings are required to be presented to judicial officers for approval before they become effective. A considerable sum of money is appropriated for clerk hire in the Supreme Court, but the amount to be paid to each clerk is to be approved by the judges of the Supreme Court. A great many appropriations are made upon the condition that the necessity and validity of the expenditure shall receive the approval of some officer before payment can be made. In these and like cases it has always been considered that the assent and concurrence of the approving tribunal or officer were necessary, and no good reason has been shown us for making an exception of this case, or that the legislative intention was that a deliberative body like a city council should be required to say they approve of that which does not meet their approval.

Our attention has been called to a different ruling on a similar statute by the Supreme Court of Oklahoma, as found in the carefully prepared opinion in *Board of Education v. Mayor, etc. of City of Kingfisher* (48 Pac. 103). While entertaining a high opinion of the learning and ability of that court, we are unable to follow its reasoning or concur in the conclusion which it reaches.

The writ will be denied.